312 Ga. 466
FINAL COPY

S21A0740.  MAHDI v. THE STATE.

ELLINGTON, Justice.

A Fayette County jury found Mustafa Mahdi guilty but mentally ill of the malice murder of John David Quincy III and guilty of possession of a knife during the commission of a felony.[1] In

_____

[1] Quincy was stabbed to death on March 24, 2014. On April 4, 2014, a Fayette County grand jury indicted Mahdi for malice murder (Count 2), felony murder (Count 1), aggravated assault (Count 3), and possession of a knife during the commission of a felony (Count 4). At a July 2018 trial, the jury found Mahdi guilty but mentally ill of malice murder, felony murder, and aggravated assault, and guilty of possession of a knife during the commission of a felony. The trial court sentenced Mahdi to life in prison for malice murder and to a consecutive sentence of five years in prison for the possession charge. The aggravated assault count merged into the malice murder conviction, and the felony murder count was vacated as a matter of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). Mahdi filed a motion for new trial on August 6, 2018, which was amended on January 24 and February 10, 2020. Following a hearing, the trial court denied Mahdi's motion for new trial, as amended, on March 19, 2020.

Mahdi initially appealed his convictions through appointed counsel in Case No. S20A1414, but this Court struck that appeal from our docket and remanded the case to the trial court to hold a hearing on Mahdi's request that appointed appellate counsel be removed from the case and that Mahdi be permitted to pursue his appeal pro se. Following a hearing, the trial court relieved appointed counsel from the case and allowed Mahdi to proceed pro se. Mahdi filed a timely notice of appeal, and the case was docketed to the April 2021 term of this Court and submitted for a decision on the briefs.

this pro se appeal, Mahdi broadly asserts that the trial court, as well as his trial and appellate counsel, violated his constitutional rights. We discern from these claims that Mahdi contends (1) the trial court violated his due process rights by allowing his trial attorneys to present an insanity defense against his wishes; (2) he received ineffective assistance of trial and motion-for-new trial counsel; and (3) his trial and motion counsel violated his right to conflict-free representation. We affirm for the reasons set forth below.

The evidence at trial showed the following. In 2014, Mahdi lived with his grandmother, Blondyne Greer. On March 24, the day of Quincy's death, Greer confronted then 17-year-old Mahdi about his misbehavior and failing grades. Upset that she was unable to handle Mahdi, Greer called her daughter, Darlene, and asked for help. Darlene told Greer that she would send her husband, Quincy, over to Greer's house to pick up Mahdi.

When Quincy arrived at Greer's house that evening, he told her that he was going to get some of Mahdi's clothes and take Mahdi home with him. Greer testified that she "heard a scuffle" while she

2

was in her bedroom, and when she went to the living room, she saw Quincy on the floor, struggling with Mahdi. When Greer realized that Quincy was wounded and bleeding, she tried to get Mahdi off of Quincy by beating Mahdi with her cane. She heard Quincy say, "You're killing me Mustafa." Greer phoned the police, and a City of Fayetteville police officer responded within minutes.

The responding officer saw a bloody footprint on a rug inside the home. In the living room, he encountered Mahdi, who was standing over Quincy. Greer was cowering in a corner of the room. After a second officer arrived at the scene, Mahdi yelled, "I stabbed him.  I stabbed him." The officers arrested Mahdi and took him to the hospital, where he received stitches in one finger.

Quincy was transported to a hospital, where he died. The medical examiner testified that Quincy suffered over 75 blunt- and sharp-force wounds to the neck, torso, extremities, head, and eyes, including 11 deep stab wounds. Quincy died as a result of stab wounds to his neck and torso.

Police officers recovered a steak knife from the living room

where Quincy had been. The blood on the knife contained the DNA of both Quincy and Mahdi.

Mahdi's attorneys presented an insanity defense. Mahdi had begun acting strangely following the death of his mother in 2012. Greer testified that Mahdi did not like Quincy, whom Mahdi accused of "sexually harassing" him. A clinical psychologist, Dr. Robert Shaffer, opined that Mahdi was suffering from paranoid schizophrenia, including delusions that persons intended to sexually violate him or were actively sexually violating him. Shaffer testified that Mahdi believed that Quincy was going to kill or rape him on the night that he stabbed Quincy. In Shaffer's opinion, Mahdi's belief that he was in imminent danger was the result of his delusion. Mahdi did not testify at trial.

After the State presented rebuttal witnesses, forensic psychologist Dr. Darcy Shore testified as a court's witness. According to Dr. Shore, she had evaluated Mahdi pursuant to the court's order and found no presence of a mental illness in Mahdi.

1. Mahdi contends that the trial court violated his right to due

process under the Fourteenth Amendment to the United States Constitution because "the Court clearly saw [him] directly state that he was under no delusion[, and the Court] certainly could have ruled that [he] did not qualify for the insanity defense[,] . . . yet [the Court] opt[ed] to move forward[.]" To support this claim, Mahdi points to an ex parte discussion during the trial among himself, the trial court, and his two trial attorneys. During that proceeding, the court advised Mahdi of his right to testify and asked his attorneys to discuss with him whether testifying at trial was in his best interest. The court then allowed trial counsel to put on the record at the ex parte hearing any advice that they had given Mahdi. One of Mahdi's trial attorneys stated that both attorneys had advised Mahdi not to testify. Counsel explained, among other concerns, that he anticipated such testimony would provide direct evidence that Quincy had molested Mahdi. Counsel assessed that such testimony would make it more likely that the trial court would charge the jury on revenge for a prior wrong and would also make it more difficult for the defense to argue to the jury that there was no evidence that

5

Mahdi had acted out of revenge.

Following counsel's statement, Mahdi told the trial court that the "claims of [his] molestation [by Quincy] . . . are the central focus of [his] defense." Mahdi also represented to the court that he had only realized during opening statements that his attorneys would maintain that "there is no objective evidence that any of these sexual abuses happened." The trial court asked Mahdi to discuss with his attorneys further whether he should testify and to reflect carefully on that decision. Mahdi later acknowledged that he had freely and voluntarily decided not to testify.

Mahdi's due process claim was not raised and ruled on below. Accordingly, this argument is not preserved for review on appeal. See, e.g., *Hampton v. State*, 308 Ga. 797, 804 (3) (a) (843 SE2d 542) (2020); *Willis v. State,* 304 Ga. 686, 695 (6) (820 SE2d 640) (2018); *Atkinson v. State*, 301 Ga. 518, 522 (3) (801 SE2d 833) (2017).

2. Mahdi asserts several claims of ineffective assistance of trial and motion-for-new-trial counsel. To show ineffective assistance of counsel, Mahdi "must prove both that his lawyer's performance was

professionally deficient and that he was prejudiced as a result." *Styles v. State*, 309 Ga. 463, 471 (5) (847 SE2d 325) (2020) (citation and punctuation omitted). See also *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). If Mahdi "fails to prove one element of this test, we need not address the other element." *Styles*, 309 Ga. at 471 (5).

(a) Mahdi argues that his trial counsel was ineffective (1) in not moving for a mistrial when, during the ex parte hearing, Mahdi asserted that he was not delusional and (2) in pursuing an insanity defense. "Claims of trial counsel ineffectiveness must be raised at the earliest practicable opportunity." *Terrell v. State*, 300 Ga. 81, 86-87 (3) (793 SE2d 411) (2016). Mahdi's motion counsel asserted numerous claims of trial counsel ineffectiveness through amendments to Mahdi's motion for new trial, and the trial court ruled that those claims were without merit. Although afforded the opportunity to raise claims of ineffective assistance of trial counsel through motion counsel, Mahdi did not then raise the specific claims of ineffectiveness at issue in this appeal. Accordingly, these claims

"are procedurally barred for failure to assert them at the first practicable opportunity." *Bedford v. State*, 311 Ga. 329, 338 (5) (c) (857 SE2d 708) (2021).

(b) Mahdi also contends that he received ineffective assistance of motion-for-new-trial counsel. In that respect, Mahdi argues that his motion counsel was ineffective for not claiming that his trial counsel was ineffective in (1) pursuing an insanity defense and (2) not fully explaining the insanity defense to him. Mahdi posits that his motion counsel should have questioned trial counsel about these issues at the motion-for-new-trial hearing.

Mahdi's motion counsel was appointed to act as his appellate counsel following the trial. Motion counsel filed amendments to the motion for new trial filed by trial counsel, represented Mahdi at the motion hearing, and filed a notice of appeal to this Court after the trial court denied Mahdi's motion for new trial. As we noted above,[2] this Court remanded that appeal to the trial court to consider Mahdi's request that appointed appellate counsel be removed from

---

[2] See footnote 1.

8

the case and that Mahdi be permitted to pursue his appeal pro se. On remand, the trial court relieved motion counsel from his appointment as Mahdi's appellate counsel and allowed Mahdi to proceed with this appeal pro se. Mahdi then asked the trial court for leave to file a second motion for new trial, but the trial court denied that request.

Given this case's procedural posture, this appeal is the first practicable opportunity for Mahdi to assert that his motion counsel was ineffective. "Generally, when a preserved ineffective assistance of counsel claim is raised for the first time on appeal, we must remand for an evidentiary hearing on the issue." *Anthony v. State*, 302 Ga. 546, 554 (V) (807 SE2d 891) (2017). However, this Court does "not allow a defendant to resuscitate a specific claim of ineffective assistance of trial counsel that was not raised at the motion-for-new-trial stage by recasting the claim on appeal as one of ineffective assistance of motion-for-new-trial counsel for failing to raise the specific claim of trial counsel's ineffectiveness." *Bedford*, 311 Ga. at 339 (5) (c) (citation and punctuation omitted). Mahdi's

claims of ineffective assistance of motion counsel hinge on motion counsel's failure to raise specific claims of trial counsel ineffectiveness at the motion-for-new-trial stage. "If [Mahdi] wishes to pursue a claim that his motion-for-new-trial counsel was ineffective in this regard, he must do so through a petition for a writ of habeas corpus." Id. at 339 (5) (c) (citation and punctuation omitted).

3. Mahdi also claims that a conflict existed between "trial counsel/appellate counsel strategy and defense testimony,"[3] such that "trial and appellate counsel also violated the counsel without conflict" protections of the Sixth Amendment. Pretermitting whether these claims are preserved for appellate review, Mahdi provides no support for his proposition that an alleged conflict based on his counsels' "strategy" rises to the level of an actual conflict of interest for the purposes of the Sixth Amendment. See *White v.*

---

[3] As we noted in Division 1, Mahdi did not testify at trial. In his appellate brief, Mahdi cites the transcript of his testimony at the hearing on the motion for new trial in support of his conflict claims. Mahdi testified at that hearing that he had been molested by Quincy and was not delusional.

*State*, 287 Ga. 713, 722 (4) (a) (699 SE2d 291) (2010) ("The question of whether an attorney labors under an actual conflict of interest for purposes of the Sixth Amendment generally arises when the purported conflict stems from the attorney's representation of multiple defendants concurrently [or] when the attorney's duty of loyalty to his client conflicts with the attorney's duty to the attorney's employer.") (citations omitted). His ill-defined argument is at best a matter of theory or speculation. See *Henry v. State*, 269 Ga. 851, 854 (3) (507 SE2d 419) (1998) (For a criminal defendant to show counsel was ineffective due to a conflict of interest, "the conflict of interest must be palpable and have a substantial basis in fact. A theoretical or speculative conflict will not impugn a conviction . . . which is supported by competent evidence.") (citation and punctuation omitted). Thus, the claim lacks merit. See id. See also *State v. Abernathy*, 289 Ga. 603, 604 (715 SE2d 48) (2011) ("[A] defendant asserting ineffective assistance of counsel based on an actual conflict of interest must demonstrate that the conflict of interest existed and that it significantly affected counsel's

11

performance.") (citation and punctuation omitted).

*Judgment affirmed. All the Justices concur.*


Decided September 21, 2021.

Murder. Fayette Superior Court. Before Judge Sams.

Mustafa Mahdi, *pro se.*

*Marie G. Broder, District Attorney, Elizabeth A. Baker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel A. Hiatt, Ashleigh D. Headrick, Assistant Attorneys General*, for appellee.