317 Ga. 107
FINAL COPY

S23A0599. MITCHELL v. THE STATE.

PETERSON, Presiding Justice.

Scean Mitchell appeals his convictions for malice murder and other offenses in connection with the shooting death of Calvin Clark, Jr.[1] Mitchell argues that the trial court abused its discretion in admitting evidence of other acts under OCGA § 24-4-404 (b) ("Rule 404 (b)"). He also argues that his trial counsel was ineffective for failing to object when the trial court instructed the jury to disregard

[1] The crimes occurred on July 14, 2017. In October 2017, a Fulton County grand jury indicted Mitchell and Jaquavious Johnson for violation of the Criminal Street Gang Act (Count 1); malice murder (Count 2); felony murder predicated on Criminal Street Gang Act violations, armed robbery, and aggravated assault (Counts 3-5); armed robbery (Count 6); aggravated assault (Count 7); and possession of a firearm during the commission of a felony (Count 8). Mitchell was also charged with influencing a witness. At a joint trial in April 2018, Mitchell and Johnson were found guilty of all charges. The trial court sentenced Mitchell to life in prison for malice murder, a consecutive life term for armed robbery, a 20-year consecutive term for the Criminal Street Gang Act violation, a five-year probated term for the firearms charge, and a three-year term for influencing a witness. The remaining counts merged or were vacated by operation of law. Mitchell filed a timely motion for new trial, which he later amended in December 2019, August 2020, June 2021, and May 2022. His motion for new trial was denied in January 2023. Mitchell filed a timely notice of appeal and his case was docketed to this Court's April 2023 term and orally argued on May 18, 2023.

evidence of self-defense and for failing to request a jury instruction on self-defense. We reject both claims. There was no abuse of discretion in admitting the Rule 404 (b) evidence because it was relevant to the issue of intent and its probative value was not substantially outweighed by its unfairly prejudicial effect. And trial counsel was not ineffective because the self-defense claim was not supported by strong evidence and was inconsistent with the defense theory counsel had reasonably pursued instead. We affirm.

Viewed in the light most favorable to the jury's verdicts, the trial evidence showed the following. On the afternoon of July 14, 2017, Clark was at the home of his girlfriend, Quintara Russell, who lived at the Forrest Cove apartment complex in Fulton County. Clark left to buy some food and marijuana, and returned with only food because he did not see anyone selling drugs. Clark left the apartment again but did not tell Russell.

At some point, Russell heard two gunshots and called to Clark to ask if he heard them. Clark did not respond, and Russell next heard someone knocking on her door and screaming that "he was

shot." Russell looked out the window and saw her porch "full of blood." She ran to the door and opened it, and Clark, bleeding from a gunshot wound, collapsed when she got there. Clark died from his gunshot wound.

Russell testified that Clark owned a gun and had it with him that day, but she did not see it on him when he was on the porch. One of the responding police officers saw shell casings near Clark's body and that his hand was positioned as though he had been holding a gun. From this, the officer testified that it was possible Clark may have been shooting a gun, although no weapon was found on Clark.

Several neighbors saw at least parts of the shooting and testified at trial. Mary Cooper testified that she heard the gunshots and then saw Jaquavious Johnson, Mitchell's co-defendant, pointing a gun while backing away as Mitchell scooped something off the ground near Clark's body. Cooper said that Johnson and Mitchell fled the scene together. Cooper, who had identified both defendants in a photo lineup, testified that she had seen the defendants

standing under a tree outside Russell's apartment for at least an hour prior to the shooting.

Chastity Spear testified that she was on her porch when she saw Clark talk to a group of men including Johnson and Mitchell outside his apartment. The group walked off, and less than three minutes later, Spear heard gunshots. Spear next saw Mitchell running away with a gun in his hand. Marshavia Horton did not see the shooting, but heard the gunshots, looked up immediately, and saw Johnson and Mitchell running away from Clark, who was on his porch.

Marshavia's mother, Jasmon, met with a detective to report that she saw the shooting and provided descriptions of the assailants. Jasmon reported that Clark went with two men behind one of the apartment buildings to buy some marijuana, and when walking back, Clark appeared to reach for his gun when it appeared that he was about to be robbed. Before he could get his gun, Johnson and Mitchell pulled their guns and started shooting at Clark, who began running back to his apartment. Jasmon found pictures of

4

Mitchell and Johnson on social media and provided these pictures to the detective, identifying them as the assailants. Jasmon reported that when Clark collapsed in front of his apartment door, Mitchell and Johnson were "grabbing something" from Clark that looked like a gun. During her police interview, Jasmon was shown a photo lineup and identified Johnson as one of the shooters. Although she did not identify Mitchell in a photo lineup, she identified him at trial. Jasmon also testified that, about an hour after the shooting, she talked to another neighbor, Soniyka Pullins, who reported that Mitchell and Johnson had been at Pullins's apartment planning the robbery of Clark. Jasmon told the detective that Mitchell and Johnson had been planning the robbery for weeks. The detective who interviewed Pullins testified that Pullins denied ever hearing anyone planning the robbery of Clark, but the detective explained that Pullins lived with Johnson and she seemed to be afraid of "snitching" on him. The detective also testified that he interviewed Takezia Johnson at the scene, and when he interviewed her again later, she told him that Mitchell heard she had been talking to the

5

police and threatened to put her in a "body bag" if he learned it was true.

Evidence at trial showed that the Forrest Cove apartment complex had a lot of criminal gang activity, and that the "Glock" gang, which was identified as a Crips-related gang, controlled the area. Further evidence showed that Mitchell and Johnson were Glock gang members, and Mitchell identified himself as such on social media.

The State also presented evidence under Rule 404 (b) showing that in August 2015, Mamady Sylla was robbed at gunpoint by several people, including Mitchell, near the Forrest Cove Apartments. Sylla was selling items from an ice cream truck during the day after school. Sylla retrieved an item from a cooler and when he approached the window, Mitchell pulled a gun on him while the other assailants went through Sylla's pocket, took his iPhone, and took money from inside the truck.

1. Mitchell argues that the trial court erred in allowing the State to introduce other-acts evidence of the 2015 robbery under

Rule 404 (b). The trial court ruled that the evidence was admissible for the purposes of showing motive, intent, and knowledge. Reviewing the trial court's decision to admit Rule 404 (b) evidence for an abuse of discretion, see *Kirby v. State*, 304 Ga. 472, 479 (4) (819 SE2d 468) (2018), we conclude that it did not abuse its discretion in admitting the evidence for the purpose of showing intent.[2]

Under Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith[,]" but such evidence may be admissible for other purposes, including to prove intent, motive, and opportunity. See OCGA § 24-4-404 (b); *State v. Jones*, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015) (Rule 404 (b) "is, on its face, an evidentiary rule of inclusion which contains a non-exhaustive list of

---

[2] Because we conclude that the evidence was properly admitted for the purpose of intent, and Mitchell raises no claim as to the jury instruction about the other purposes for which the jury could consider the evidence, arguing only that the evidence was erroneously admitted, we need not address his arguments that the evidence was not admissible for the purposes of showing motive and knowledge. See *Naples v. State*, 308 Ga. 43, 52 (2) (e) n.9 (838 SE2d 780) (2020).

purposes other than bad character for which other acts evidence is deemed relevant and may be properly offered into evidence."). A party offering Rule 404 (b) evidence must show that (1) it is relevant to an issue in the case other than the defendant's character; (2) its probative value is not substantially outweighed by its unfair prejudice under OCGA § 24-4-403; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act. See *Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017). On appeal, Mitchell addresses only the first and second prongs of the Rule 404 (b) test, and his arguments fail.

(a) On the first prong, "a defendant who enters a not guilty plea makes intent a material issue, and the State may prove intent by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue." *Naples v. State*, 308 Ga. 43, 51 (2) (e) (838 SE2d 780) (2020) (citation and punctuation omitted). When intent is at issue, the first prong of Rule 404 (b) is established when the prior act was committed with the same state of mind as

the charged crime. See id.; see also *Booth v. State*, 301 Ga. 678, 683 (3) (804 SE2d 104) (2017) ("Where the intent required for the charged offenses and other acts is the same, and intent is at issue, the first prong of the Rule 404 (b) test is satisfied.").

Here, Mitchell made intent a material issue by pleading not guilty, and he took no affirmative steps to remove it as an issue. Because intent was at issue, the relevance of the 2015 robbery was satisfied because it required the same state of mind (intent to rob) as some of the crimes — felony murder predicated on armed robbery and armed robbery — that Mitchell was charged with here. See *Harris v. State*, 313 Ga. 653, 661 (3) (872 SE2d 732) (2022) (where defendant was charged with felony murder predicated on armed robbery, armed robbery, and aggravated assault with intent to rob, other-acts evidence of prior robberies was relevant to the issue of intent).

(b) On the second prong, the Rule 403 balancing test requires other-acts evidence to be excluded if it constitutes "matter of scant or cumulative probative force, dragged in by the heels for the sake

9

of its prejudicial effect." *McKinney v. State*, 307 Ga. 129, 137 (3) (b) (834 SE2d 741) (2019) (citation and punctuation omitted). "Factors to be considered in determining the probative value of other act evidence offered to prove intent include its overall similarity to the charged crime, its temporal remoteness, and the prosecutorial need for it." *Hood v. State*, 309 Ga. 493, 501 (2) (847 SE2d 172) (2020) (citation and punctuation omitted). For purposes of evaluating overall similarity, we must also consider any differences between the other acts and the charged crimes. See *Kirby*, 304 Ga. at 484 (4) (a) (i) (noting that significant differences would be fatal to the admissibility of other-acts evidence offered to prove identity).

Here, the two offenses both occurred in the same area (in or near the Forrest Cove apartment complex), in broad daylight, and involved the use of a firearm. There was at least one significant difference between the other act and the charged crime. In the 2015 robbery, the victim did not appear to have any interaction with Mitchell or his accomplices prior to getting robbed, whereas in this case, Clark was seen going behind a building with several men,

including Mitchell and Johnson, before the robbery and shooting. But this difference was not so significant such that it would have been an abuse of discretion to conclude that the similarities gave the other-acts evidence substantial probative value. See *Kirby*, 304 Ga. at 484 (4) (a) (i) (where prior armed robbery and charged crime had significant similarities and differences, the trial court had the discretion to determine that prior act retained substantial probative value). This significant probative value was not diminished by temporal remoteness, as the events were separated by only two years. See *Hounkpatin v. State*, 313 Ga. 789, 795-796 (2) (a) (873 SE2d 201) (2022); see also *United States v. Cardenas*, 895 F2d 1338, 1344 (11th Cir. 1990) ("[t]he probative value of the extrinsic offense correlates positively with its likeness to the offense charged" and an extrinsic offense carries more probative value where less time separates it from the charged offense (citation and punctuation omitted)).

The probative value of the evidence was strengthened by the prosecutorial need for it. Although Mitchell's chief defense at trial

was that he was misidentified as the second participant in the crime, pointing out during closing argument that only one trial witness had identified him as one of the assailants prior to trial, his intent was also a crucial issue. In making the argument about being misidentified as the second assailant, Mitchell conceded that witnesses may have seen him in the area at the time of the crime, as he "hangs out in the area," and argued the jury would be instructed on "mere presence," which essentially provides that although "mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." *Rainwater v. State*, 300 Ga. 800, 802 (1) (797 SE2d 889) (2017) (citation and punctuation omitted). The jury was charged on mere presence. By suggesting that, even if he were not misidentified and had actually been at the scene, he was merely present and did not share the criminal intent of the primary assailant, Mitchell made intent an important issue. See *Hood*, 309 Ga. at 501 (2) ("As we have explained, if the principal in the killing

12

was not the defendant, . . . a question then would have arisen about whether the defendant was a party to the crime as an accomplice, which would have depended substantially upon [his] intent."); *Heard v. State*, 309 Ga. 76, 94 (3) (g) (844 SE2d 791) (2020) (intent is a "crucial issue[ ]" where a defendant is, at most, a party to the crimes charged); *Fleming v. State*, 306 Ga. 240, 248 (3) (b) (830 SE2d 129) (2019) (the State had a high prosecutorial need for the other-acts evidence in order to overcome the defendant's mere presence defense and prove that he shared the same criminal intent as the unknown assailants).

On balance, the similarities between the offenses, the prosecutorial need, and the temporal proximity of the evidence provided significant probative value to the other-acts evidence. The evidence was certainly prejudicial, but Mitchell has not demonstrated that this unfair prejudice substantially outweighed its probative value. Therefore, the trial court did not abuse its discretion in admitting the evidence.

2. Mitchell next argues that his defense counsel was ineffective

on two grounds related to ensuring that a justification defense was presented to the jury. Mitchell argues that trial counsel should have requested a jury instruction on self-defense since there was evidence to support it, and that she should have objected when the trial court instructed the jury to disregard any claim of self-defense. Neither of these grounds has merit.

To prevail on his claims, Mitchell must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Mitchell must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Mims v. State*, 304 Ga. 851, 855 (2) (823 SE2d 325) (2019) (citation and punctuation omitted). "[D]ecisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent

14

attorney would have followed such a course." *Richards v. State*, 306 Ga. 779, 781 (2) (833 SE2d 96) (2019) (citation and punctuation omitted). To demonstrate prejudice, Mitchell must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mims*, 304 Ga. at 855 (2) (citation and punctuation omitted). Failure on one prong of the *Strickland* test is fatal to an ineffective assistance claim. See *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015).

In support of his argument that a jury instruction on self-defense was justified, Mitchell points to evidence showing that Clark pointed a gun at him and that Mitchell shot in return. Although counsel did not request a jury instruction on self-defense, she used this evidence in closing arguments, arguing that Mitchell did not have the criminal intent to shoot the victim, because he just fired back and was defending himself after Clark pulled out a gun. The State objected, arguing that counsel had improperly raised self-

defense when Mitchell had not admitted to committing the act. Defense counsel responded that she was not trying to mount a self-defense argument, and the trial court then instructed the jury, without objection from defense counsel,[3] that self-defense was not an issue in the case and that it should disregard any evidence that Mitchell may have acted in self-defense because he did not admit to firing a weapon in self-defense.

At the motion for new trial hearing in May 2022, defense counsel generally acknowledged that trial counsel should have objected to the trial court's instruction, but also explained that the theory of misidentification was the strongest defense available, even after she was able to elicit previously unknown evidence at trial that Mitchell may have acted in self-defense.

Based on this testimony, Mitchell argues that a self-defense claim was viable and that defense counsel should have requested a jury instruction on self-defense or objected to the court's action. But

---

[3] Defense counsel objected to some of the language in the curative instruction, but did not argue against a curative instruction.

16

at the time of his trial in April 2018, the trial court's action was supported by existing case law. See, e.g., *Kellam v. State*, 298 Ga. 520, 522 (2) (783 SE2d 117) (2016) ("[A]n affirmative defense is one that admits the doing of the act charged but seeks to justify, excuse, or mitigate it. Accordingly, if a defendant does not admit to committing any act which constitutes the offense charged, he is not entitled to a charge on the [affirmative defense]." (citation and punctuation omitted)); *McLean v. State*, 297 Ga. 81, 83 (2) (772 SE2d 685) (2015) ("[T]o assert an affirmative defense, a defendant must admit the act, or he is not entitled to a charge on that defense." (citation and punctuation omitted)).

It was not until a year later that this Court overruled that case law and held that a defendant need not "admit" that any alleged facts are true, but can accept certain facts as true for argument's sake, in order to raise an affirmative defense and is entitled to a jury instruction when slight evidence supports it, "whether in the State's evidence or evidence presented by the defendant, and regardless of whether the theory of the affirmative defense conflicts with any

17

other theory being advanced by the defendant." *McClure v. State*, 306 Ga. 856, 858-859 (1), 864 (1) & n.17 (834 SE2d 96) (2019). It is well settled that trial counsel cannot be deemed deficient for failing to anticipate changes in the law. See, e.g., *Brooks v. State*, 309 Ga. 630, 637 (2) (847 SE2d 555) (2020) ("The standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense." (citation and punctuation omitted)).

Setting aside that Mitchell's self-defense claim was dubious, at best, and logically conflicted with the theory of misidentification,[4] to

---

[4] The evidence shows that Mitchell and Johnson had planned to rob Clark and that Clark responded to this threat by pulling (or attempting) to pull out his gun. A self-defense argument would have been weak at best. See OCGA § 16-3-21 (b) (2) (a person is not justified in using force to defend himself when he is "attempting to commit, committing, or fleeing after the commission or attempted commission of a felony"). Moreover, because there is a high risk of alienating a jury by presenting "defense theories that logically conflict, such as misidentification and self-defense," "it is rarely an unreasonable strategy to not pursue" alternative defense theories. *Gaston v. State*, 307 Ga. 634, 637 (2) (a) (837 SE2d 808) (2020); see also *McClure*, 306 Ga. at 866 (Nahmias, P. J., concurring) ("Presenting inconsistent defenses to the jury, particularly when the evidentiary support for one defense is considerably weaker than for others or where a defense is contradicted by the defendant's own account of events, risks losing credibility for *all* of the defenses. Thus, a decision by defense counsel to forgo the option of presenting an inconsistent alternative defense and instead to focus on the defense or defenses that he reasonably believes to

18

ask counsel to have argued against the trial court's action and for a jury instruction on self-defense would have required counsel to anticipate a change in the law. Counsel's failure to do so is not deficient performance, so Mitchell's claims fail.

*Judgment affirmed. All the Justices concur, except LaGrua, J., disqualified.*

Decided August 21, 2023.

Murder. Fulton Superior Court. Before Judge Eaton.

*The Steel Law Firm, Brian Steel*, for appellant.

*Fani T. Willis, District Attorney, Michael S. Carlson, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Chelsea S. Harvey, Assistant Attorney General*, for appellee.

---

be the strongest under all the circumstances will usually not constitute deficient performance under *Strickland*[.]" (emphasis in original)).