NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia


Decided: October 24, 2023


S23A0443. HARDY v. THE STATE.


WARREN, Justice.

In November 2021, Deveric Hardy was convicted of malice murder for the November 2016 shooting death of Kyree Smith.[1] He appeals that conviction, arguing that his trial counsel provided constitutionally ineffective assistance by failing to introduce

---

[1] Smith was killed in November 2016. In March 2017, a Gwinnett County grand jury indicted Hardy and Stefan Ellington for malice murder, three counts of felony murder, and one count each for the underlying felonies of aggravated assault, attempt to possess greater than one ounce of marijuana, and attempt to purchase marijuana. In the same indictment, Anthony Benson was charged with tampering with evidence. Hardy was tried alone in November 2021. The jury found him guilty of malice murder, felony murder based on aggravated assault, and aggravated assault. The jury found him not guilty of the remaining offenses. The court sentenced him to serve life in prison on the malice murder count, vacated the felony murder count, and merged the aggravated assault count. Hardy timely moved for a new trial with new counsel, amending the motion once. In October 2022, after an evidentiary hearing, the trial court denied Hardy's motion. He filed a timely notice of appeal. The case was docketed to the April 2023 term of this Court, and we now decide it based on the briefs.

evidence that Smith had a violent character and by failing to request a jury instruction on accomplice corroboration. For the reasons explained below, we affirm.

1. As pertinent to his claims on appeal, the evidence presented at Hardy's trial showed the following. On the night of November 28, 2016, Hardy, who was driving a car with Blake Stratton sitting in the backseat, and Smith, who was driving a car with Anthony Benson sitting in the back seat, met in the parking lot of a fast-food restaurant in Gwinnett County. After a brief interaction, Hardy fired a gun "more than once," hitting Smith twice, once in the right upper chest and once in the left side of the back. Smith died from his injuries. Hardy was later arrested for Smith's murder in Tennessee.

At trial, Benson and Hardy each testified as to what happened that night. Benson testified as follows.[2] He and Smith were close friends, and Smith sold marijuana. On the night of the shooting, he

---

[2] As noted in footnote 1 above, Benson was indicted for tampering with evidence. He was granted testimonial immunity for Hardy's trial. The resolution of Benson's indictment is not clear from the record.

and Smith went to the parking lot to sell someone marijuana. Benson did not know who the prospective buyer was. Benson sat in the back seat of the car to provide "protection," although neither he nor Smith was carrying a gun. Smith had two bags of marijuana in the car.

When Benson and Smith arrived at the parking lot, Smith initially pulled up on the passenger's side of the car that was waiting for them. Benson saw a passenger in the car, but he did not talk to anyone in the other car or hear any conversation between Smith and the passenger. After less than a minute, Smith pulled around to the driver's side of that car, positioning his car so the drivers were next to each other and the cars were "pretty close" together. Smith spoke to the driver briefly. Benson could not hear the conversation, and he could not clearly see the people in the other car.

Then, Benson heard "more than one" gunshot. Benson did not know where the shots came from. Smith "yelled out," and his foot hit the gas, causing the car to move forward and get stuck on a median in the parking lot. Benson took the marijuana and "dumped

3

the bags out behind the car" in the woods because he "didn't want anybody getting in trouble."[3] He saw that people who had been at the restaurant were calling 911, so he did not. He took Smith's phone because he thought it was his own.[4] He spoke to the police at the scene and later that night at the police precinct, but did not tell them the truth about why he and Smith were in the parking lot because he did not believe that Smith was dead and he did not want Smith "to get in trouble for anything weed related."[5]

Hardy testified as follows. He met Stefan Ellington at a party a few months before the shooting, and Ellington told Hardy he knew someone who could sell him a new phone. Hardy made plans through Ellington to meet "a guy named Nick" in the restaurant

---

[3] At some point that night, Benson told the lead investigator that "he threw a bag of marijuana into the woods," and an officer was able to find a bag of about two ounces of marijuana behind the parking lot.

[4] Benson later gave his phone and Smith's phone to the police.

[5] Later, at the hearing on the State's Motion to Grant Testimonial Immunity to Benson, Benson testified that Smith "had a play" to sell marijuana in the parking lot the night of the shooting.

parking lot and buy iPhones.[6]  Hardy did not know Smith.[7]  After Hardy arrived at the parking lot, another car arrived and pulled up to the passenger's side of Hardy's car, and the driver talked to Stratton.  Then, the car pulled to the driver's side, parking so Hardy and the other driver were "window to window."

Hardy asked, "do he have the phones," and the driver asked how much money Hardy had.  Hardy responded, "like 500," and then the driver put a gun "in [Hardy's] face."  According to Hardy, he held up his hands and then reached for the gun that was "in his face," and the two men "wrestled for it."  After a short struggle, Hardy gained control of the gun.  The driver was still "advancing through the window," and Hardy shot the gun "more than once," "defending [him]self until [the driver] stopped becoming aggressive."  Hardy did

---

[6] No evidence was presented that someone named Nick appeared in the parking lot for the purported iPhone sale.

[7] Text messages between Smith's phone and Ellington's phone indicate that Ellington had arranged to meet Smith in the parking lot to buy two ounces of marijuana on the night of the shooting.  Also, in the hours leading up to the shooting, Ellington's phone and Hardy's phone exchanged several phone calls.  There was no evidence of contact between Smith's phone and Hardy's phone presented at trial.

not see if the passenger in the back seat had a gun. The other car then drove up an embankment in the parking lot, and Hardy dropped the gun outside his window and drove away. No guns were found at the scene of the shooting, and the murder weapon was never found. Stratton also testified at trial, telling a story that was similar to Hardy's.

At trial, Hardy argued that he shot Smith in defense of himself and in defense of Stratton or in defense of habitation (i.e., his car).

2. Hardy contends that trial counsel provided constitutionally ineffective assistance by failing to introduce evidence that Smith had a violent character and by failing to request a jury instruction on accomplice corroboration. Both of Hardy's claims fail.

"To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant." *Perkins v. State*, 313 Ga. 885, 901 (873 SE2d 185) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984)). "To satisfy the deficiency prong, a

defendant must demonstrate that his attorney 'performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms.'" *Perkins*, 313 Ga. at 901 (citation omitted). This demonstration requires a defendant to overcome the "'strong presumption'" that trial counsel's performance was adequate. Id. (citation omitted). A defendant attempting to carry his burden "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016).

"To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different." *Perkins*, 313 Ga. at 901. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sullivan v. State*, 308 Ga. 508, 510 (842 SE2d 5) (2020) (quoting *Strickland*, 466 U.S. at 694). "This burden is a heavy one." *Young v. State*, 305 Ga. 92, 97 (823 SE2d 774) (2019).

"Ineffectiveness claims involve mixed questions of law and fact, and 'a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous,' whereas conclusions of law based on those facts are reviewed de novo." *Sullivan*, 308 Ga. at 510 (citation omitted). "'If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.'" *Bates v. State*, 313 Ga. 57, 63 (867 SE2d 140) (2022) (citation omitted).

(a) Hardy first claims that trial counsel provided ineffective assistance by failing to introduce evidence through Brevin Egerton, a high school classmate of Smith's, that Smith had a violent character. Pretermitting whether trial counsel's performance was constitutionally deficient, we conclude that Hardy's claim does not succeed because he has not shown that his counsel's performance resulted in prejudice to him.

At trial, Hardy's counsel asked the court to allow him to introduce evidence of Smith's "pertinent trait[s] of character" under

8

OCGA § 24-4-404 (a) (2) because Hardy had made a prima facie case of self-defense.[8] Trial counsel sought to introduce this evidence through Egerton, from whom Smith robbed shoes about 18 months before the shooting. Counsel argued that Egerton's testimony would show that Smith had "a reputation for being a robber" or a reputation for "predatory behavior." The trial court ruled that it would not admit evidence of specific acts, such as the shoe robbery,

---

[8] OCGA § 24-4-404 (a) says:

Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for:

(1) Evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under paragraph (2) of this subsection, evidence of the same trait of character of the accused offered by the prosecution;

(2) Subject to the limitations imposed by Code Section 24-4-412 [dealing with sex offense cases], evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused or by the prosecution to rebut the same; or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor; or

(3) Evidence of the character of a witness, as provided in Code Sections 24-6-607, 24-6-608, and 24-6-609 [dealing with impeaching a witness].

9

but that counsel could introduce opinion evidence of Smith's reputation for "deceptiveness." Egerton then testified that he attended high school with Smith and that Smith was "known in the community for being deceptive and deceitful." Trial counsel did not ask Egerton questions about any specific acts or whether Smith had a violent character.

At the motion-for-new-trial hearing, trial counsel—the only witness Hardy presented—testified that he did not elicit testimony from Egerton that Smith was violent because he "interpreted the Judge's rulings" as prohibiting Egerton's "opinion that [Smith] was violent or any of the facts and circumstances behind how [Egerton] reached that opinion." Pretermitting whether counsel's failure to elicit from Egerton evidence that Smith was violent constituted deficient performance,[9] Hardy has not shown that any such deficiency caused him prejudice under *Strickland*. See *Strickland*, 466 U.S. at 687.

---

[9] Specifically, Hardy appears to contend that trial counsel should have elicited evidence of Smith's reputation for violence by impeaching Benson with Egerton's trial testimony.

In the context of an ineffective assistance claim, we have explained that a defendant cannot rely on defense counsel's testimony about what counsel expected an uncalled witness to say as evidence that the testimony would have been favorable to the defendant. See *Wofford v. State*, 305 Ga. 694, 697 (827 SE2d 652) (2019). But Hardy seeks to do just that. And given that Hardy did not present testimony from Egerton at the motion-for-new-trial hearing, trial counsel "could only speculate about what" testimony Egerton might have given. Id. As a result, Hardy has not shown that Egerton "could have offered favorable testimony at trial" and cannot establish prejudice. See id. His claim therefore fails. See id. (rejecting an ineffective assistance claim where the appellant attempted to establish prejudice using trial counsel's testimony at the motion-for-new-trial hearing about what counsel expected a police officer—who was not called to testify at trial—would have said if he had been called to testify) (citation omitted). See also *Allen v. State*, ___Ga.___, ___ (890 SE2d 700, 710) (2023) (rejecting an ineffective assistance claim on the prejudice prong where the

11

appellant pointed only to trial counsel's testimony at the motion-for-new-trial hearing about what counsel expected a video expert to testify to at trial, and explaining that to show prejudice in such circumstances, "'[e]ither the uncalled witness must testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony'") (citation omitted).[10]

(b) Hardy contends that trial counsel provided constitutionally ineffective assistance by failing to request a jury instruction on accomplice corroboration. Because Hardy has not shown that his counsel was deficient in this respect, his claim fails.

Hardy claims that an accomplice-corroboration instruction was warranted because some evidence was presented at trial that Benson was an accomplice to the charged crimes. Pretermitting

---

[10] To the extent Hardy also argues that trial counsel's failure to introduce evidence of the shoe robbery constituted ineffective assistance, he failed to raise that claim at the motion-for-new-trial stage when he had new counsel. Thus, that claim is procedurally barred. See, e.g., *Mahdi v. State*, 312 Ga. 466, 469 (863 SE2d 133) (2021) ("Although afforded the opportunity to raise claims of ineffective assistance of trial counsel through motion counsel, [appellant] did not then raise the specific claims of ineffectiveness at issue in this appeal. Accordingly, these claims "are procedurally barred for failure to assert them at the first practicable opportunity.").

whether there was at least slight evidence that Benson was an accomplice to Hardy's crimes, Hardy has not demonstrated that trial counsel's performance was deficient because we cannot say that his counsel was objectively unreasonable in deciding not to request the jury instruction Hardy complains about on appeal.

"Decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. In particular, the decision about which jury charges to request is a classic matter of trial strategy." *Rayton v. State*, 314 Ga. 29, 35 (875 SE2d 708) (2022) (citation and punctuation omitted). At the hearing on Hardy's motion for a new trial, trial counsel provided the following rationale for deciding not to request the accomplice-corroboration instruction. Trial counsel testified that his defense theory was that Hardy met Smith "under the auspices of purchasing cell phones," that Smith first assaulted Hardy, and that Hardy shot Smith because Hardy was "defending himself." Counsel believed that an accomplice-corroboration instruction would

13

contradict the defense theory because it could have implied that Hardy was not in the parking lot for the innocent purpose of buying phones.

The record supports trial counsel's reasoning. Hardy testified at trial that he wrestled the gun away from and shot Smith only after Smith pointed the gun at Hardy. And trial counsel repeatedly argued at trial that Hardy went to the parking lot to buy phones— not marijuana—and that Hardy had a right to protect himself from Smith's aggression. Under these circumstances, we cannot say that trial counsel's tactical decision to forgo an accomplice corroboration instruction was "so patently unreasonable that no competent attorney would have followed such a course." *Rayton*, 314 Ga. at 35 (citation omitted). See also *Perkins*, 313 Ga. at 903-904 (holding that it was not objectively unreasonable for trial counsel to decide not to request an accomplice corroboration instruction where the evidence supporting such an instruction was "at best slight" and counsel testified at the motion-for-new-trial hearing that his defense theory was based on the insufficiency of the evidence and that "he did not

'believe that [the accomplice-corroboration] significantly help[ed] under the facts and circumstances of this case'"); *Vasquez v. State*, 306 Ga. 216, 230 n.13 (830 SE2d 143) (2019) ("We have previously recognized that, in the context of a claim of ineffective assistance of counsel, it may be a reasonable trial strategy for the defense to forgo a request for an accomplice-corroboration charge even though it was warranted by the evidence presented at trial."); *Manner v. State*, 302 Ga. 877, 883-884 (808 S.E.2d 681) (2017) (rejecting the argument that trial counsel's performance was deficient for withdrawing an accomplice corroboration instruction request because "it was not objectively unreasonable for counsel to conclude that any benefit to [the appellant] in instructing the jury that [a witness's] testimony required corroboration was outweighed by the instruction's potential conflict with the theory of defense"). Consequently, Hardy has not established that his trial counsel performed deficiently, so his second claim of ineffective assistance fails.

*Judgment affirmed. All the Justices concur.*