**FIFTH DIVISION**
**MERCIER, C. J.,**
**BARNES, P. J. and MCFADDEN, P. J..**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 13, 2025**

# In the Court of Appeals of Georgia

A24A1312. HARRIS v. THE STATE.

MCFADDEN, Presiding Judge.

A jury found Bennie Harris III guilty of one count of aggravated assault-family violence. After the trial court denied his motion for new trial, Harris filed this appeal. He argues that the trial court erred by admitting other acts evidence, but we hold that the trial court did not err. We hold that the testimony of the victim's family was intrinsic evidence and so not subject to the three-part test for admission under OCGA § 24-4-404 (b), and that its probative value was not outweighed by prejudice. As to the testimony of Harris's former girlfriend, which was extrinsic evidence, we hold that the trial court properly applied the Rule 404 (b) three-part balancing test. He argues that the evidence was insufficient to support his conviction, but we hold that the state

presented sufficient evidence from which a rational trier of fact could find Harris guilty beyond a reasonable doubt. Finally, Harris argues that trial counsel performed deficiently in two respects. As to the first, we hold that he has failed to show that trial counsel performed deficiently in response to a disruption that occurred outside the courtroom. The second, trial counsel's omission to make a particular objection, is procedurally barred. So we affirm.

1. *Trial evidence*

> When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

*Rutherford v. State*, 370 Ga. App. 873, 875 (1) (899 SE2d 457) (2024) (citation and punctuation omitted).

So viewed, the testimony presented at trial showed that Harris and the victim have been in a romantic relationship since 2014 or 2015. On September 27, 2019, the

victim called 911 to report that she had been strangled. She sounded breathless and said that she could not breathe.

Police officers responded to the call at a hotel in Fulton County where Harris and the victim were staying. When the officers arrived, they saw Harris speaking loudly to the victim, who was sitting in a car. The victim was upset. The victim told the responding officers that Harris woke her up while she was sleeping because he wanted to have sex. She told him no. He became angry and began strangling her. She could not breathe.

The officers had the victim write a witness statement. She wrote that Harris had put both hands around her neck, that she could not breathe, and that she called for help.

The victim testified at trial and denied any abuse. She testified that Harris has never hit her, strangled her, or harmed her in any way. She denied that Harris had strangled her the night she called 911, at least against her will. She testified that she told the police that she had asked Harris to put his hands around her neck while they were having sex. But the night of the incident, the victim told the officers that she did

not have sex with Harris, and she did not tell them that she had asked Harris to strangle her.

During her testimony, the victim admitted calling 911 on the day of the incident and reporting that Harris had "put his hands" on her, but she testified that she was under the influence of alcohol and that she was angry because Harris had told her that he was expecting a child with another woman. She admitted that she told the 911 operator that she could not breathe, and she admitted that she was crying on the call, but she denied that she was scared. She testified that she called 911 because she wanted to leave or wanted the police to make Harris leave. She admitted writing the witness statement.

Some time after the incident, the victim informed an investigator and an assistant district attorney that she wanted the charge dropped, and she signed a document at Harris's attorney's office stating that she wanted the charge dropped.

The victim's aunt testified about what the victim had told her about the incident. She testified that the victim told her that the victim came home from work, Harris wanted to have sex, she said no, and he tried to rape her. According to the aunt, the victim said that she tried to fight him off, and he started beating and strangling her.

The victim told her aunt that she felt as if Harris were going to kill her. The aunt testified that after the incident, the victim's neck was swollen and she was scratched and bruised.

Other relatives testified about the existence of a volatile relationship between Harris and the victim. The victim's sister testified about injuries the victim had sustained that the victim attributed to Harris. The victim's son testified that Harris chased the victim and left messages on the son's phone apologizing when the victim was bruised. The son testified that the victim said that Harris had choked her. The victim's mother testified about the victim's multiple injuries, at least one of which the victim attributed to Harris. She testified that on one occasion when Harris and the victim were staying with her, the victim ran to her mother's bedroom, screaming, "Don't hit me no more."

Harris's former girlfriend, with whom Harris had a 14-year relationship and with whom he had two children, testified about their relationship. She testified that Harris isolated her from her family, was controlling, and was verbally and physically abusive. He strangled her, beat her with a belt, poured bleach on her, and fractured her

nose and two of her fingers. She eventually obtained a temporary family violence protective order against him.

2. *Other acts evidence*

The state filed notices of its intent to introduce other acts evidence through the testimony of the victim's family and the testimony of Harris's former girlfriend. After a pretrial hearing, the trial court ruled that the other acts evidence involving the victim was intrinsic evidence, rather than extrinsic evidence subject to OCGA § 24-4-404 (b) ("Rule 404 (b)"), and that its probative value was not outweighed by prejudice. See OCGA § 24-4-403 ("Rule 403") ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ."). The trial court ruled that the evidence concerning the former girlfriend was offered for a proper purpose, was probative, and was relevant, and that its probative value was not substantially outweighed by unfair prejudice. We review these rulings for an abuse of discretion. *Mitchell v. State*, 317 Ga. 107 (891 SE2d 915) (2023) (OCGA § 24-4-404 (b) evidence); *Harris v. State*, 310 Ga. 372, 377 (2) (b) (850 SE2d 77) (2020) (intrinsic evidence).

(a) *Other acts of violence against the victim*

Harris argues that the trial court erred in admitting the other acts testimony of the victim's family. He argues that the evidence was extrinsic, not intrinsic, contrary to the trial court's ruling, so the trial court erred by failing to apply the Rule 404 (b) test for its admission.

> Evidence is admissible as intrinsic evidence, rather than extrinsic evidence subject to Rule 404 (b), when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense.

*Harris*, 310 Ga. at 377 (2) (b) (citations and punctuation omitted).

We hold that the trial court did not abuse her discretion in finding that the testimony of the victim's family members was intrinsic evidence. The evidence

> pertain[ed] to the chain of events explaining the context . . . of the crime[, was] linked in time and circumstances with the charged crime, [and was] necessary to complete the story of the crime for the jury [because it] advanced the [s]tate's theory of the case that the charged offense[ was] the culmination of a series of incidents[. Additionally,] the [s]tate had some need for this evidence[, particularly given the victim's testimony denying the crime occurred,] to give further context as to why this series of incidents occurred.

*Harris*, 310 Ga. at 378-379 (2) (b) (citations, punctuation, and emphasis omitted). Because this evidence was intrinsic, the trial court was not required to apply the Rule 404 (b) test for its admission. *Smith v. State*, 307 Ga. 263, 272 (2) (c) (834 SE2d 1) (2019); *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). And Harris has not shown that the trial court incorrectly applied Rule 403 when weighing the probative value of the evidence and the danger of unfair prejudice. So Harris has not shown that the trial court abused her discretion in admitting this evidence.

(b) *Other acts of violence against the former girlfriend*

Harris argues that the trial court erred in admitting the other acts evidence from his former girlfriend because the court did not apply the Rule 404 (b) three-part balancing test. The record shows otherwise.

For Rule 404 (b) evidence to be admissible, the party offering it must show that "(1) it is relevant to an issue in the case other than the defendant's character; (2) its probative value is not substantially outweighed by its unfair prejudice under [Rule 403]; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act." *Mitchell*, 317 Ga. at 110 (1).

The state offered the evidence to show, among other things, Harris's intent to harm his intimate partners. At the hearing, the court made an oral ruling that the evidence was offered for a proper purpose, that it was relevant, and that it was not overly prejudicial. Although the court did not explicitly address whether there was sufficient proof for a jury to find that Harris had committed the acts against the former girlfriend, we will not conclude that the trial court failed to consider this part of the test, absent some affirmative showing otherwise. See *Hornbuckle v. State*, 300 Ga. 750, 753 (2) (797 SE2d 113) (2017) ("In the absence of any explicit ruling by the trial court we cannot assume that [the trial court] improperly applied the law . . . ."); *Hamby v. State*, 358 Ga. App. 105, 111 (3) (853 SE2d 874) (2021); *Dixon v. State*, 350 Ga. App. 211, 214 (1) (828 SE2d 427) (2019) ("[A]bsent some express showing that the trial court did not understand its obligation to conduct the balancing test [under Rule 403], we will not read such error into the trial court's ruling.").

In the order denying Harris's motion for new trial, the court reiterated the oral ruling, holding that the evidence was admissible for a proper purpose, that the state presented sufficient evidence to establish that Harris had committed those acts, and that the evidence satisfied the Rule 403 balancing test. Contrary to Harris's argument

9

on appeal, the trial court applied the three-part balancing test, so he has not shown that the trial court erred in admitting this evidence.

3. *Sufficiency of the evidence*

Harris seems to argue that absent the allegedly improperly admitted other acts evidence, the evidence was insufficient to support his conviction. But because the evidence was properly admitted, as detailed above, this argument lacks merit.

Harris argues that the evidence was insufficient because the victim testified that he had not committed the act alleged in the indictment; because the victim had explained the reason for her 911 call and her statements to police; because the state admitted no photographs or medical records documenting the victim's injuries; and because expert testimony that the victim's voice was affected by the strangulation was speculative, since the witness had not heard the victim's voice before the strangulation.

> When evaluating a challenge to the sufficiency of the evidence as a matter of constitutional due process, we view all of the evidence presented at trial in the light most favorable to the verdict and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. . . . [D]espite [Harris's arguments], viewing the evidence in the light most

10

favorable to the verdict, we conclude that the evidence was sufficient for a reasonable jury to find [Harris] guilty beyond a reasonable doubt.

*Williams v. State*, 314 Ga. 671, 673-674 (2) (878 SE2d 553) (2022) (citation and punctuation omitted).

4. *Ineffective assistance of counsel*

Harris raises two claims of ineffective assistance of trial counsel. Neither entitles him to reversal.

"To show ineffective assistance of counsel, [Harris] must prove both that his lawyer's performance was professionally deficient and that he was prejudiced as a result. If [Harris] fails to prove one element of this test, we need not address the other element." *Mahdi v. State*, 312 Ga. 466, 468 (2) (863 SE2d 133) (2021) (citations and punctuation omitted).

Harris argues that trial counsel was ineffective because he failed to move for a mistrial based on repeated audible disruptions from witnesses fighting outside of the courtroom. (Harris gives the record citation for only one disruption. ) We disagree.

11

The record shows that during the testimony of the victim's son, the trial court judge asked a deputy to escort the jury out because "there seemed to be some sort of commotion at the door about who could come in and who couldn't."

After the jury was removed, the judge explained that the commotion occurred when a witness who had completed her testimony attempted to re-enter the courtroom. The judge stated that she "observed four jurors looking at that instead of listening to [the prosecutor] or looking at the witness." She noted that "the sheriff's department has concerns about the safety of emotions running high between the family of the defendant and the family of the victim," so officers elected not to allow anyone to enter the courtroom for the rest of the day. Defense counsel stated, "with that revelation about the sheriff's office, we're fine."

The trial court found in the order denying the motion for new trial that Harris failed to show that the disruption had communicated any information to the jurors and that he failed to show that the trial court had mishandled the disruption.

> Measures to be taken as a result of demonstrations and outbursts which occur during the course of a trial are matters within the trial court's discretion unless a new trial is necessary to insure a fair trial.

12

> Where the trial court fails to act to stop a disturbance, or fails to instruct the jury to disregard it, and the demonstration will prevent the defendant from receiving a fair trial, the court must grant a new trial.

*Messer v. State*, 247 Ga. 316, 324 (6) (276 SE2d 15) (1981). Given that no information was communicated to the jurors during the commotion at the door of the courtroom, Harris has not shown that the disruption was so prejudicial as to prevent Harris from receiving a fair trial. See *Williams v. State*, 251 Ga. 749, 797 (10) (312 SE2d 40) (1983). Nor has he shown that the trial court abused her discretion in handling the disruption.

"These circumstances do not show that a mistrial was required to preserve [Harris's] right to a fair trial, so trial counsel was not deficient for failing to request one." *Jackson v. State*, 317 Ga. 139, 146 (2) (891 SE2d 878) (2023). "[B]ecause we cannot say that trial counsel's performance was objectively unreasonable in the light of prevailing professional norms, trial counsel was not constitutionally deficient [for failing to move for a mistrial]." *Robbins v. State*, ___ Ga. ___, ___ (3) (___ SE2d ___) (Case No. S24A0512, decided Oct. 15, 2024).

Harris argues that trial counsel was ineffective because he failed to object when Harris's former girlfriend testified about his pouring bleach on her, pulling her hair, and fracturing her bones. He argues that such testimony was not relevant to establish

his intent to strangle the victim, the purpose for which the trial court admitted the other acts evidence. But Harris did not raise this claim of ineffectiveness at the first practicable opportunity — in the motion for new trial proceedings in which he was represented by different counsel — so it is procedurally barred. *Mahdi*, 312 Ga. at 469 (2) (a).

*Judgment affirmed. Mercier, C. J., and Barnes, P. J., concur.*