NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 3, 2026

S26A0250. CLARK v. THE STATE.

PETERSON, Chief Justice.

Gerald Jerome Clark appeals his convictions for malice murder and other offenses for the death of Mary Kilpatrick.[1] Clark argues

---

[1] The crimes occurred on September 26, 2020. On August 2, 2021, a DeKalb County grand jury returned an indictment charging Clark with malice murder (Count 1), two counts of felony murder (Counts 2 and 3), arson in the first degree (Count 4), two counts of aggravated assault (Count 5, for entrapping Kilpatrick in the trunk of a vehicle and setting the vehicle on fire, and Count 6, for shooting Kilpatrick), kidnapping (Count 7), criminal damage to property in the first degree (Count 8), possession of a firearm during the commission of a felony (Count 9), and possession of a firearm by a convicted felon (Count 10). At an April 2024 jury trial, the jury found Clark guilty on all counts except possession of a firearm by a convicted felon, which was bifurcated for purposes of trial and ultimately nolle prossed. On April 26, 2024, the trial court sentenced Clark to life in prison without the possibility of parole for malice murder, consecutive sentences of twenty years for the aggravated assault conviction on Count 6 and five years for possession of a firearm during the commission of a felony, and concurrent sentences of life without parole for kidnapping and ten years for criminal damage to property in the first degree. The other counts merged or were vacated by operation of law. Clark filed a timely motion for new trial, which was amended by appellate counsel on March 3, 2025. The trial court denied the motion in an order entered on March 26, 2025. Clark filed a timely notice of appeal, and the appeal was docketed to this

that the trial court abused its discretion by (1) not declaring a mistrial after a witness acknowledged that he had spoken to another witness who already had testified and that he had read a newspaper account of the previous day's proceedings; and (2) admitting evidence that Clark attempted to hire a fellow inmate to kill a State's witness. We conclude that (1) the alleged error in failing to declare a mistrial was not preserved for our review; and (2) Clark has not shown that the trial court abused its discretion in admitting the evidence of the alleged solicitation of the murder of a witness. We therefore affirm.

The evidence presented at trial showed the following. In the early morning of September 26, 2020, police responded to a DeKalb County subdivision due to a vehicle fire in a field about 100 to 200 yards from the road. A burned body was located in the trunk. The vehicle's VIN identified the owner of the car, a 1995 Lincoln Town Car, as Kilpatrick, who police concluded was the deceased victim.

Court's term of court beginning in December 2025 and submitted for consideration on the briefs.

Kilpatrick had been shot in the abdomen and had a broken jaw. Bullet holes in the trunk suggested that it had been fired upon. Investigators concluded that the fire started in the passenger compartment and trunk space and that an accelerant had been used. The medical examiner determined that Kilpatrick had been alive when the fire was started — based on the presence of soot in her airway and blood testing that showed a lethal quantity of carbon monoxide — and concluded that Kilpatrick died due to smoke and soot inhalation.

Shortly after Kilpatrick's death, Clark's cousin, Christopher Swope, came forward to law enforcement and implicated Clark as Kilpatrick's killer. Swope testified at trial that early on the morning of September 26, 2020, Clark came to his house and claimed to have "bodies" in the trunk of the car he was driving — a car that Swope had not seen Clark drive before. Clark demanded that Swope "hurry up" and retrieve some gasoline. Swope drove his truck to a gas station to fill up the gas can, then returned home. Swope gave the gas to Clark, who put the gas canister into the car instead of filling

up the tank. Swope heard a woman in the trunk screaming for help and saying, "I won't tell." Clark cracked the trunk and told the person inside, "[S]hut up or I'll kill you right now. I'm trying to give you the chance to get right with your maker before I send you to meet him." Clark reported to Swope that the woman in the trunk had pulled a gun on him and attempted to rob him. Clark indicated that he planned to set the car on fire and told Swope to follow him. Clark got into the car, with Swope following in his vehicle, and drove a short distance, before Clark stopped, opened the trunk, and fired a handgun into the trunk about nine times. Clark then drove into a field in the subdivision where the burned car was ultimately found, with Swope still following. After Clark repeated his intention to set the car on fire and told Swope to drive away and pick him up later, Swope left the scene. Swope returned a few minutes later and saw the car on fire.

Swope later directed police to the location where he said Clark shot the victim, and officers recovered several shell casings there. Swope's testimony also was corroborated in part by clips from Ring

4

camera videos from Swope's house, which appeared to show Clark arriving and asking for gas, Swope retrieving a gas can, Swope's truck leaving the driveway, then Clark and Swope both preparing to leave. Additionally, the State's case included security surveillance video from a hotel where Kilpatrick had been staying, which showed her there with Clark on the night before she died, leaving with Clark in the Lincoln Town Car in the early morning hours.

A friend of Clark's, Carlton Darwin, also testified for the State. Darwin testified that he saw Clark on the afternoon of September 25, 2020, with a woman in an "old school" car, such as a Lincoln. Clark came by Darwin's residence later that night in the same car. Darwin could hear the sound of a woman screaming coming from the trunk of the car. When Darwin confronted Clark, Clark responded, "I thought she was dead." Darwin observed that Clark was holding a gun.

1. Clark argues on appeal that the trial court abused its discretion by not declaring a mistrial after Darwin acknowledged that he had spoken to Swope after Swope testified and that he had

5

reviewed news accounts of the proceedings. We conclude that this claim is not preserved for our review.

On cross-examination, Darwin acknowledged that he had spoken with Swope after Swope had testified, saying that Swope had told him that defense counsel had "roasted him." Darwin also acknowledged that he had reviewed news coverage about the case the previous day. At that point, the jury was excused at defense counsel's request, and the defense moved for a mistrial on the basis that Darwin had spoken with Swope before testifying, citing "witness tampering" and the rule of sequestration. The trial court indicated it was inclined to deny the mistrial request but permitted defense counsel to voir dire the witness. Outside of the jury's presence, Darwin testified that he had spoken to Swope once during the trial and asked Swope "why he look so shook," but "really [didn't] even listen" to Swope's response. Darwin also reiterated that he had reviewed news accounts of the proceedings. The defense renewed the request for a mistrial, on the basis that Darwin's having reviewed the news coverage was "inappropriate[.]" The trial court denied the

6

request for a mistrial, then told the parties that it would issue a curative instruction in the form of an admonition of Darwin and the prosecution. Defense counsel responded, "No objection" to the court's proposed curative instruction. The jury returned to the courtroom, and the court admonished Darwin and the State in front of the jury and told the jury that Darwin should not have spoken to a witness who had already testified or reviewed any news coverage about the case. Thereafter, defense counsel did not renew her motion for mistrial and instead resumed her cross-examination of Darwin. After the State rested, the defense recalled Swope and elicited his testimony that he spoke to Darwin after testifying and that although he told Darwin that the defense was "drilling" him, they did not discuss the substance of Swope's testimony or the facts of the case.

Because Clark failed to renew his motion for a mistrial after the trial court gave its curative instruction, he has waived the issue on appeal. See *Jivens v. State*, 317 Ga. 859, 866 (2023) (defendant waives for appeal issue of trial court's denial of motion for mistrial where he fails to renew his motion following court's administration

7

of curative instruction); *Hartsfield v. State*, 294 Ga. 883, 886 (2014) (same). Therefore, this enumeration leaves nothing for us to review.

2.     Clark's only other enumeration of error is that the trial court abused its discretion by admitting evidence that Clark attempted to hire a fellow inmate to kill a State's witness. We conclude that Clark has not shown that admission of the evidence was an abuse of discretion.

About two weeks before the start of trial, the State had filed a notice of its intent to introduce evidence of Clark having solicited a fellow inmate, Courtney Stokes, to kill a witness in the case. The notice stated that the evidence was intrinsic evidence of consciousness of guilt such that no notice was actually required under OCGA § 24-4-404(b) ("Rule 404(b)").[2] At a pre-trial hearing,

---

[2] Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon

8

Clark's counsel indicated that she "would be arguing whether or not his testimony is even trustworthy" and "on [OCGA § 24-4-403 ("Rule 403")] issues as far as prejudicial versus probative." See Rule 403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

Prior to the start of the final day of trial, the State presented Stokes's testimony as a proffer. In his proffer, Stokes testified that while he was housed with "Gee" in the DeKalb County jail, Gee offered him $10,000 to kill Gee's cousin (whom Gee referred to as "Swop") because the cousin was a "snitch" and the State's star witness in Gee's case. Stokes proffered that Gee provided a

good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

description of his cousin and where his cousin lived and provided Stokes with the contact information of a person from whom Stokes could obtain a gun. Asked whether he believed that he actually was being solicited for a murder for hire, Stokes proffered: "No, what I believe was I was having a conversation with somebody, jail talk. So you never know what's real and what's not."

At the conclusion of the proffer, the State argued that the testimony was admissible as intrinsic evidence and relevant to demonstrate Clark's consciousness of guilt. The State argued that the testimony was also admissible under Rule 404(b), as it was relevant and highly probative of consciousness of guilt and as sufficient proof existed that Clark solicited Stokes to kill Clark's cousin. The State argued that the probative value of the evidence was "more than marginal to us and not outweighed by the danger of any unfair prejudice." The defense argued that the evidence was not intrinsic and should not be admitted as extrinsic evidence, either, because "consciousness of guilt is not an element for anything charged," the testimony was "not reliable," and the evidence was

"more prejudicial than any evidence that has been put before this jury all week" and "to add such a prejudicial circumstantial evidence in this case just definitely outweighs the probative value." The trial court ruled that the proffered testimony was admissible pursuant to Rule 404(b). Stokes then testified before the jury, generally consistent with his proffer; this time testifying more clearly that the inmate who solicited him was Clark. When the State asked Stokes in front of the jury whether he believed that Clark wanted him to kill his cousin, the trial court sustained a defense objection.

In denying Clark's motion for new trial, the trial court stated that it "stands by its ruling at trial"; that "[t]he evidence was admissible either as intrinsic evidence or under [Rule] 404(b) to show consciousness of guilt"; and that "[t]o the extent a [Rule] 403 ruling was not explicitly announced at trial, … the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice."

Clark argues that the State's position is not supported by *West v. State*, 305 Ga. 467 (2019), relied on by the trial court, because the

11

State in its arguments to the trial court referred to the alleged solicitation of Stokes as a "prior act," whereas the solicitation in fact took place after the murder. To the extent that Clark means to suggest that the evidence does not fall within the ambit of Rule 404(b) for this reason, that argument misunderstands the rule. Rule 404(b) refers to the admissibility of evidence of "*other* crimes, wrongs, or acts" (emphasis supplied), not merely "*prior*" acts. And *West* itself involved admissibility of an act committed after the charged crime and thus is authority that an act committed after the charged crime may be admissible under Rule 404(b).[3]

And Clark makes no cogent argument on appeal that any of the requirements of Rule 404(b) are not met. See *Mitchell v. State*, 317 Ga. 107, 110 (2023) ("A party offering Rule 404 (b) evidence must show that (1) it is relevant to an issue in the case other than the

---

[3] Clark also argues that *West* does not apply because the actions at issue here took place prior to trial, while the actions in *West* took place during trial. See id. at 472–75 (evidence that the appellant attempted to influence a juror during his trial was properly admitted under Rule 404(b)). But he does not explain how that distinction means that any requirement of Rule 404(b) is not met or that the evidence was otherwise inadmissible.

defendant's character; (2) its probative value is not substantially outweighed by its unfair prejudice under OCGA § 24-4-403; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.").[4] He therefore has not met his burden to show that the evidence did not satisfy those requirements. See id. at 110–12 (considering only those Rule 404(b) prongs that were addressed by the appellant on appeal); *Fleming v. State*, 306 Ga. 240, 246–48 (2019) (same). Clark has not shown that the trial court abused its discretion in admitting evidence of the alleged solicitation.[5]

*Judgment affirmed. All the Justices concur.*

---

[4] Clark points to Stokes's proffer that he thought that Clark's remarks to Stokes were just "jail talk," not an actual solicitation of a murder for hire. But Clark does not appear to have made this specific argument at trial, and he does not explain on appeal how that aspect of Stokes's testimony factors into the question of admissibility under Rule 404(b) or cite any authority for the idea that the seriousness with which a solicitation of the execution of a witness was made goes to admissibility (rather than weight).

[5] Clark argues that the evidence at issue does not qualify as intrinsic. But because Clark has not shown that the evidence failed to satisfy the requirements of Rule 404(b), we need not consider whether the evidence also was admissible as intrinsic. See *West*, 305 Ga. at 473 n.6 (noting that evidence of witness tampering may sometimes qualify as intrinsic evidence not subject to Rule 404(b)).